UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIE E. KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:11-cv-01727-TWP-DML |
| | ) |
| CITY OF INDIANAPOLIS, | ) |
| JONATHAN M. LAWLIS, | ) |
| ROBERT K. MCCAULEY, BRAD ALFORD, | ) |
| and DAVID MILLER, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Defendants', City of Indianapolis ("the City"), Officers Jonathan M. Lawlis, Robert K. McCauley, Brad Alford, and David Miller (collectively, "Defendants") Motion for Partial Summary Judgment (Dkt. 56). Plaintiff Willie E. King ("Mr. King") filed multiple claims under 42 U.S.C. § 1983 ("§ 1983") against Defendants including unlawful seizure of person and property, use of excessive force and failure to intervene in violation of the Fourth Amendment, failure to provide due process under the Fourteenth Amendment, violation of the First Amendment, malicious prosecution in violation of the Fourth and Fourteenth Amendments, and violation of the Indiana torts of battery and false arrest. *See* Dkt. 44. Defendants seek partial summary judgment on Mr. King's § 1983 claims of unreasonable seizure of property, failure to intervene, violation of the First Amendment, and malicious prosecution. Additionally, Defendants seek summary judgment for the City under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). For the reasons set forth below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I. <u>BACKGROUND</u>

The following facts are undisputed. On February 18, 2011, Indianapolis Metropolitan Police Department ("IMPD") Officer Robert McCauley ("Officer McCauley") initiated a traffic stop of a vehicle. The driver, William Gilmore ("Mr. Gilmore"), pulled into the driveway of 3901 North Whittier Avenue, which is the residence of Arthur and Leona Harris. Officer McCauley determined that Mr. Gilmore was intoxicated and Mr. Gilmore resisted Officer McCauley's attempts to be arrested. Officer McCauley requested assistance from other officers. Multiple IMPD officers responded to the scene and a crowd of onlookers gathered in the yard and street in front of the Harris residence.

Mr. King had lived in the neighborhood for 41 years and had been a neighbor of the Harris's for 40 years. Mr. King became aware of the situation across the street when he stepped outside for fresh air and heard neighbors yelling about the police. Mr. King retrieved his iPhone and began to video record. He walked across the street through the Harris's yard to the Harris's front porch. As Mr. King was walking to the porch, Officer Brad Alford ("Officer Alford") approached Mr. King and told him to leave the area or go indoors. Mr. King responded that he was going to his friend's house. Once Mr. King reached the Harris's porch and was near the doorway to the house, Officer Alford turned his attention back to Mr. Gilmore and the crowd.

Mr. King continued video recording the incident from the Harris's front porch. Officer David Miller ("Officer Miller") was standing in the Harris's yard and noticed Mr. King on the porch. Officer Miller told Officer McCauley that Mr. King was video recording the incident. Officer Miller then told Mr. King that police could confiscate his phone if the video showed Mr. Gilmore resisting arrest. Mr. King stated "I don't give a fuck what you do," Dkt. 60 at 2:50–2:54 (video, manually filed), and continued video recording. Officer McCauley then approached

Mr. King and asked if Mr. King was recording and said, "I need your camera." Dkt. 60 at 2:59–3:00. Mr. King responded, "You ain't taking shit." Dkt. 60 at 3:00-3:01. Officer Jonathan Lawlis ("Officer Lawlis") also approached Mr. King, and when Mr. King did not voluntarily give the officers his cell phone, Officer Lawlis grabbed Mr. King and pulled him off the porch onto the ground. Mr. King dropped the phone, which Officer McCauley picked up and powered down.

Mr. King was arrested for Residential Entry, Obstruction of Justice, Resisting Law Enforcement, Refusal to Leave an Emergency Incident Area, and Public Intoxication. He was ultimately charged with Resisting Law Enforcement, Disorderly Conduct, and Public Intoxication. Mr. King was found not guilty of all charges following a bench trial.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a

paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

Defendants assert they are entitled to summary judgment on certain claims because Mr. King cannot establish (1) that he had clearly established rights barring qualified immunity as to his First and Fourth Amendment unreasonable seizure claims; (2) that Officers Miller and Alford and an unknown officer had sufficient personal involvement in deprivations of his constitutional rights in order for them to be liable to Mr. King; (3) that officers Alford, Miller and McCauley failed to intervene; (4) that he can sustain a Fourth Amendment malicious prosecution claim; and (5) that the City is liable to him for having an unconstitutional policy, practice, or custom regarding the confiscation of cell phones. The Court will address the sufficiency of each claim in turn.

**A.   Qualified Immunity**

"Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013) (internal quotation omitted). Qualified immunity gives public officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). To overcome qualified immunity, a plaintiff must show both "(1) that the facts make out a constitutional

4

violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott*, 705 F.3d at 713. It is within the Court's discretion to grant immunity on the basis that the right was not clearly established without determining whether there was a violation in the first place. *Id*; *see Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

The inquiry into whether a clearly established right existed at the time of the conduct can be divided into two parts. A plaintiff may show that there is a "clearly analogous case establishing a right to be free from the specific conduct at issue or that the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (internal quotations omitted). The Supreme Court has instructed that when looking at case law, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 753 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### 1. First Amendment

Defendants contend that as of February 18, 2011, Mr. King did not have a clearly established right to video record Mr. Gilmore's arrest under the circumstances. In particular, Defendants note that the Seventh Circuit was silent on the issue until 2012, after the incident in question. In *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012), the court found in the context of a preliminary injunction that the Illinois wiretapping statute was unconstitutional as applied to the ACLU's police accountability program, which consisted of video recording police officers while conducting their public duties. Because *Alvarez* was decided after the incident in question, it alone cannot be relied upon as clearly establishing Mr. King's right to video record the Defendant Officers.

Mr. King cites *Smith v. Cumming*, 212 F.3d 1332 (11th Cir. 2000) and *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011) to support that he had a clearly established right to video record the police carrying out their public duties. In *Smith*, the Eleventh Circuit found that plaintiffs "had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct." 212 F.3d at 1333. The plaintiff, who had a history of bad relations with the local police, was randomly following and video recording police officers. The plaintiff never interfered with officers and video recorded from public property. Relying on a long list of authority, the court stated, "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Id.*

In *Glik*, the First Circuit denied defendant officers qualified immunity holding that "a recognized right to film governmental officials or matters of public interest in public space" exists. 655 F.3d at 85. The plaintiff was on a walk when he approached police officers arresting a man. Concerned that the police were using excessive force, the plaintiff began video recording the arrest from approximately ten feet away. When the arrest was complete, the plaintiff was arrested for violating the Massachusetts wiretap statute. In its reasoning, the court noted the "fundamental and virtually 'self-evident' nature of the First Amendment's protections in this area." *Id. Glik*, however, was decided in August 2011, months after Mr. King's arrest.

Mr. King argues, relying on "the long line of authority upon which [these cases] are based, it was clearly established as of February 2011, that Mr. King had the constitutional right to videotape the police while they were engaged in the performance of their official duties." Dkt. 71 at 16. For further support he points to *Alvarez*, in which the Seventh Circuit relied upon the strong First Amendment interests implicated by recording public officials performing official

6

duties in public. 679 F.3d at 597. The interests are foundational, such as the freedom to "discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment," *id.* (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 767 (1978)), as well as, "our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *id.* (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2828–29 (2011)). In other words, Mr. King contends that the right to video record police is so fundamental and obvious, that a reasonable officer would know that seizing Mr. King's cell phone was a violation of his First Amendment rights.

Defendants argue that not only was the Seventh Circuit silent on the issue, but in 2011 there was a circuit split dealing with a person's First Amendment right to video record police activity. *Compare Smith*, 212 N.E.2d 1332, *with Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010), *and Syzmecki v. Houck*, 353 Fed. App'x 852 (4th Cir. 2009). Thus, Defendants argue, the split among the circuits is indicative of an entitlement to qualified immunity. *See Upton v. Thompson*, 930 F.2d 1209, 1217 (7th Cir. 1991) (noting that a split is "indicative" that an issue is "unsettled as a matter of constitutional law" and is therefore not clearly established).

In *Kelly*, the Third Circuit granted qualified immunity, holding that "there is insufficient case law establishing a right to videotape police officers during a traffic stop to put a reasonably competent officer on 'fair notice' that seizing a camera or arresting an individual for videotaping police during the stop would violate the First Amendment." 622 F.3d at 262. The plaintiff in *Kelly* had been a passenger in a vehicle stopped by a police officer and surreptitiously video recorded the traffic stop. When the officer became aware, he seized plaintiff's video recorder and eventually arrested plaintiff. The court examined its own case law and noted although it had

recognized a broad right to videotape police, some cases "imply that videotaping without an expressive purpose may not be protected." *Id.* Therefore, it determined that there was insufficient case law regarding "First Amendment rights to obtain information by videotaping under the circumstances here." *Id.* It further supported its ruling by noting that traffic stops are inherently dangerous. *Id.*

In *Syzmecki*, an unpublished decision from the Fourth Circuit, the court determined that the plaintiff's "asserted First Amendment right to record police activities on public property was not clearly established in this circuit at the time of the alleged conduct." 353 Fed. App'x at 853. The plaintiff had attempted to video record the police interacting with her husband, but was told to put away her cell phone or go to jail. The court granted the defendant officer qualified immunity without intensive analysis.[1] The court noted that "if the right is recognized in another circuit and not in this circuit, the official will ordinarily retain the immunity defense." *Id.* (internal quotation omitted).

The Court must consider the particularities and context of the right at issue in this case. Although the facts of this case are similar to *Glik*, that case was decided months after the incident with Mr. King. Moreover, the additional facts present here, a person resisting arrest and tense crowd, distinguish the facts from *Smith* and *Glik*. The Court agrees with Mr. King that First Amendment interests are foundational and strong. However, the contours of the right in these circumstances had not been settled as of February 2011 by the Seventh Circuit. Although not dispositive, the circuit split is somewhat indicative of the uncertainty in this area of law, and also

---

[1] In *Glik*, the First Circuit found *Syzmecki* to be unpersuasive given both its lack of precedential value and in depth treatment of the issue. *See* 655 F.3d at 85.

of the importance of the factual circumstances in each case.[2] Moreover, *Smith* recognized that the right to video record police would be subject to reasonable time, place, and manner restrictions. The Court cannot say with certainty that it was clearly established in February 2011 that Mr. King's actions during a tense active arrest situation with crowd control concerns would not be viewed as subject to some reasonable restrictions. Therefore, Mr. King's right was not clearly established and Defendant Officers are granted qualified immunity on this claim.

    **2.    Fourth Amendment**

Defendants contend that the seizure of Mr. King's phone was justified by exigent circumstances. Nonetheless, they argue, Officer McCauley is entitled to qualified immunity with respect to Mr. King's Fourth Amendment right to be free from seizure under the circumstances. Mr. King argues that the warrantless seizure of his iPhone was not supported by exigent circumstances, but fails to address whether he had a clearly established right to be free from the seizure under the circumstances. On a claim of the qualified immunity defense, "plaintiff bears the burden of demonstrating the violation of a clearly established right." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). Defendants urge the Court to apply the doctrine of waiver; "[a]rguments not developed in any meaningful way are waived." *Central States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999). Here, the Court interprets Mr. King's argument as broad enough to encompass both prongs of the qualified immunity analysis. *See* Dkt. 71 at 21–22 ("It is patently unreasonable for the police to demand a person surrender physical possession of an expensive and important cellphone simply because it contains video on it that they contend is relevant to an investigation.").

---

[2] In *Alvarez*, the Seventh Circuit noted the circuit split on this issue in qualified immunity cases and stated that "we do not need to take sides in this circuit split in order to decide this case." 679 F.3d at 601 n.10. The court also cited the following article that notes several cases, none of which deal with the specific factual context present here: Seth F. Kreimer, *Pervasive Image Capture and the First Amendment: Memory, Discourse, and the Right to Record*, 159 U. Pa. L.Rev. 335, 368 n.113 (2011) (collecting district court cases).

As an initial matter, the Court finds that there is a clearly established right to be free from the warrantless seizure of a cell phone. This right is especially clear in the instant circumstances, where Mr. King was video recording police activity and crime, but was not himself engaged in unlawful activity at the time the iPhone was seized.[3] Mr. King has not provided any analogous case law, likewise, the Court has not found any. However, the lack of analogous cases is not determinative because the right to be free from warrantless seizures is an obvious and clearly established right.

The remaining issue is whether the warrantless seizure of Mr. King's phone was justified by exigent circumstances, a doctrine usually applied to warrantless entries or searches. "The exigent circumstances doctrine recognizes that there may be situations in which law enforcement officials may be presented with 'a compelling need' to conduct a search, but have 'no time to secure a warrant.'" *Bogan v. City of Chi.*, 644 F.3d 563, 571 (7th Cir. 2011) (quoting *United States v. Dowell*, 724 F.2d 599, 602 (7th Cir. 1984)). When reviewing a warrantless search or seizure to determine if exigent circumstances existed, courts ask whether "a reasonable officer had a reasonable belief that there was a compelling need to act and no time to obtain a warrant." *Id.* (quoting *United States v. Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006) (additional quotation omitted). The determination is made on the totality of facts and circumstances from the position of the officer. *Id.* Relevant to this case, "the need 'to prevent the imminent destruction of evidence' has long been recognized as a sufficient justification for a warrantless search." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)).

---

[3] This is unlike in *Brady v. Gonzalez*, 2009 WL 1952774, No. 08C5916, at *3 (N.D. Ill. July 2, 2009), in which the court found that the seizure of plaintiff's cell phone was not unlawful when it was taken along with plaintiff's personal items upon arrest. Additionally, in *United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007), the Fifth Circuit found that a post-arrest warrantless seizure of a cell phone is lawful.

10

The Court finds that Mr. King has raised a significant question of material fact precluding summary judgment in Defendants' favor.  Defendants claim that the potential imminent destruction of evidence—i.e., the video Mr. King was recording—created an exigent circumstance justifying the seizure of the iPhone.  Taking the facts most favorable to Mr. King, it is not clear that the destruction of evidence was imminent, nor that the seizure was motivated by a need for the evidence.  The Court is not convinced that a reasonable officer would feel, first, that the evidence was necessary and, second, that there was a compelling need to act and no time to obtain a warrant for the evidence.  Therefore, qualified immunity is not granted on this claim.

**B.     Personal Involvement**

"Individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue." *Kelly v. Mun. Courts of Marion Cty.*, 97 F.3d 902, 909 (7th Cir. 1996).  Claims under § 1983 require personal involvement in the alleged deprivation, though direct participation is not necessary. *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003).

   **1.     Officer Miller**

Defendants contend that Officer Miller was not personally involved in the alleged constitutional deprivations, and therefore cannot be held liable.  Mr. King argues that Officer Miller instigated the chain of events that culminated in the seizure of Mr. King's iPhone.  It is undisputed that Officer Miller appears in the video and tells Mr. King that the police could take the cell phone if he were video recording.  Mr. King speculates, and attempts to construe as fact, that Officer Miller caused Officer McCauley to approach Mr. King and ultimately take Mr. King's iPhone.  However, this version of events is only speculation.  The only evidence on record to this point is the statements from Officer Miller and Officer McCauley.  Officer Miller

stated that he advised Officer McCauley that Mr. King was video recording and reminded him of training the officers had received about seizing cell phones. *See* Dkt. 58-6 at 5, 13:7–25.  Officer McCauley stated that after Mr. Gilmore had been secured, he approached Mr. King to seize the cell phone, but never indicated that Officer Miller was the impetus for his decision. *See* Dkt. 58-3 at 16, 25:18–25; at 22:5–7 (answering "no" when asked if anybody told Officer McCauley to take Mr. King's cell phone).  Mr. King's speculation, based upon proximity, that Officer Miller instigated the seizure of Mr. King's iPhone is insufficient to create a genuine issue of material fact.  Therefore, the Court finds Officer Miller was not personally involved on a sufficient level to be held liable for Mr. King's alleged constitutional deprivations.

### 2. Officer Alford

Defendants also contend that Officer Alford was not personally involved in the alleged constitutional deprivations, and therefore cannot be held liable.  Mr. King argues that Officer Alford made false statements to other officers, which resulted in Mr. King being arrested and charged with resisting arrest and public intoxication.  Specifically, the probable cause affidavit for Mr. Kings arrest states that Officer Alford observed Mr. King "being aggressive and [ ] intoxicated," Dkt. 58-2 at 2, that Officer Alford observed Mr. King "going in and out of the surrounding yards . . . yelling profanity at the officers," Dkt. 58-2 at 2, and that Officer Alford heard Mr. Harris state that "he did not want [Mr. King] to run inside his house away from police," Dkt. 58-2 at 2.  "Accordingly," Mr. King argues, "it was based upon the information received by Officer Lawlis from Officer Alford that he arrested and charged Mr. King." Dkt. 71 at 25.  This argument fails.  The evidence does not suggest that Officer Alford told Officer Lawlis this information prior to Mr. King's arrest, and even taken in the light most favorable to Mr. King, statements made after arrest do not suffice to establish § 1983 liability.

3.     **The Mystery Third Officer**

Mr. King alleges that three officers engaged in his arrest and seizure: Officer McCauley, who seized the cell phone; Officer Lawlis, who took down Mr. King; and a mystery third officer, alleged to be either Officer Miller or Officer Alford. Officer Miller is seen on the video approaching Mr. King along with Officer McCauley and Officer Lawlis, but it is unclear if Officer Miller physically participated in the arrest and seizure. Mr. King has not provided any other evidence that ties Officer Miller to these actions. Further, there is no evidence that implicates Officer Alford, except an equivocal statement from Officer Lawlis that Officer Alford was "probably" assisting in the take down of Mr. King. *See* Dkt. 72-11 at 3. However, it is mere speculation that either Officer Miller or Officer Alford physically assisted in the take down or arrest of Mr. King. This speculation is not enough to establish personal involvement that establishes § 1983 liability.

**C.    Failure to Intervene**

An officer who fails to intervene may be liable under 42 U.S.C. § 1983 if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official, *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). A "realistic opportunity to intervene" exists when an officer can call for back-up or help, or cautioned the offending officer to stop. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). This issue is generally one for the trier of fact. *Id.* Here, the third prong applies. Mr. King alleges that Officers Miller, Alford, and McCauley failed to intervene to prevent the use of force and arrest by Officer

Lawlis. Defendants contend that, as a matter of law, there was not a reasonable opportunity to intervene.

The facts indicate that Officer Lawlis took control of Mr. King and handcuffed him in a matter of seconds. Officers McCauley and Miller were nearby, and Officer McCauley was speaking to Mr. King immediately before Officer Lawlis made contact with Mr. King. Mr. King argues that a second officer assisted Officer Lawlis once Mr. King was on the ground, "[a]ccordingly, all four officers, McCauley, Alford, Miller, and Lawlis, can be held directly liable for the use of force against Mr. King when he was on the ground." Dkt. 71 at 28. The Court disagrees. Taking the undisputed facts most favorable to Mr. King, Officer Lawlis acted quickly to take down Mr. King and Officers Miller, Alford, and McCauley did not have a reasonable opportunity to intervene in the use of force, as a matter of law. As for the arrest, Mr. King has not produced evidence that creates a genuine issue of material fact that any of the Officers had a reasonable opportunity to intervene in the arrest. Therefore, Officers Miller, Alford, and McCauley cannot be held liable for failing to intervene.

### D. Malicious Prosecution

The Supreme Court and Seventh Circuit have both held that there is no federal constitutional claim for malicious prosecution under the due process clauses. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001). There is less clarity for federal malicious prosecution claims grounded in the Fourth Amendment. *See Wallace v. Kato*, 349 U.S. 384, 390 n.2 (2007); *Avila v. Pappas*, 591 F.3d 552, 553 (7th Cir. 2010); *Johnson v. Saville*, 575 F.3d 656, 663 (7th Cir. 2009). In *Avila*, the Seventh Circuit stated that although "malicious prosecution does not violate the Constitution's due process clauses[,] [t]here might be a problem under the fourth amendment if a person is arrested without probable

cause." 591 F.3d at 553. The court went on, "but when the suit is directed against the prosecution itself, rather than any attendant custody, there is no constitutional wrong." *Id.*

Mr. King's claim is that Officer Lawlis and Officer McCauley gave false testimony in their accounts of Mr. King's behavior and arrest in the probable cause affidavit and Mr. King's criminal trial. Because Mr. King was acquitted of criminal charges, he argues that the false testimony subjected him to malicious prosecution. He frames his claim, in an attempt to avoid summary judgment and dismissal under *Albright* and *Newsome*, as a Fourth Amendment claim of unlawful arrest.[4] Defendants argue that, first, Mr. King has state law remedies that bar his federal claim for malicious prosecution and, second, he has no evidence that either officer acted with malice.

The Court finds that Mr. King has not put forth sufficient facts to establish an independent federal malicious prosecution claim. First, despite Mr. King's attempt to frame the claim as one grounded in the Fourth Amendment, his arguments also implicate his prosecution. *See, e.g.*, Dkt. 71 at 35 ("Officers Lawlis and McCauley testified at Mr. King's criminal trial, perjured themselves about Mr. King's actions, and made that proceeding fundamentally unfair as a result."). Second, taking his claim as one grounded in the Fourth Amendment for unlawful arrest without probable cause, this claim cannot stand when a suitable remedy exists under state law. Mr. King argues that he does not have a remedy, because Indiana law bars state law claims for malicious prosecution against police officers. *See Livingston v. Consol. City of Indianapolis*, 398 N.E.2d 1302 (Ind. Ct. App. 1979). However, Mr. King's claim is couched as a false arrest claim, which he can pursue under Indiana law and has chosen to do so in this lawsuit. *See*

---

[4] Although in *Newsome*, the court appeared to also foreclose malicious prosecution claims grounded in the Fourth Amendment, the court clarified in *Johnson* that such an interpretation "over-reads" *Newsome*. *Johnson*, 575 F.3d at 663. The court stated, "*Newsome* left open the possibility of a Fourth Amendment claim against officers who misrepresent evidence to prosecutors, provided the statute of limitations for such a claim has not expired." *Id.*

*Bishop v. City of Indianapolis*, No. 1:06-cv-1064-SEB-TAB, 2008 WL 820188, at *14 (S.D. Ind. Mar. 24, 2008) (finding that plaintiff could have brought state law claim for false arrest even though state law claim for malicious prosecution is not permitted). Moreover, Mr. King also has viable Fourth Amendment claims left in this lawsuit against both Officer McCauley and Officer Lawlis which cover the false representations made by officers in the probable cause affidavit. Therefore, the Court finds that Mr. King cannot pursue an independent malicious prosecution claim under § 1983.

**E.     *Monell* Liability**

It is well-settled that *respondeat superior* will not suffice to impose § 1983 liability on a municipality. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). Instead, case law recognizes three ways in which a municipality's policy can violate an individual's civil rights:

> (1) an express policy that, when enforced, causes a constitutional deprivation;
>
> (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or
>
> (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (citation and internal quotations omitted). Further, to be liable, a government entity's official policy or custom must be the "moving force" behind the alleged constitutional deprivation. *Grievson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).

Defendants contend that the City had no express policy, no decision from a City employee with final policymaking authority, and no widespread practice regarding the confiscation of cell phones without due process of law. To the contrary, Mr. King argues the City admitted that the seizure of his iPhone was pursuant to City policy through Officer Michael

16

Daley's ("Officer Daley") Federal Rule of Civil Procedure 30(b)(6) deposition.[5] Officer Daley testified on behalf of the City about policies and specific IMPD training that he conducted. During his deposition, Officer Daley viewed the video taken by Mr. King and opined that the officers' actions of approaching Mr. King, seizing his iPhone, and arresting him, were consistent with IMPD policies for preservation of evidence. *See* Dkt. 72-4 at 10, 34:7–21. And, in response to the question "With respect to what you have seen on this video, were the actions of the officers in approaching Mr. King and confiscating his cell phone forcibly without consent consistent with the training provided by the City of Indianapolis to its officers?", Officer Daley responded "Yes". However, when asked whether the conduct was consistent with IMPD policy that "when [officers] see individuals videotaping at a scene to tell them that . . . . [w]e can seize your cell phone, as a way to get people to stop videotaping what they are doing," Officer Daley responded that it was "[a]bsolutely not" IMPD policy. Dkt. 72-4 at 47: 3–12. Holding the City liable for this conduct would be an impermissible application of *respondeat superior*. The Court thus finds that Mr. King has not established an express policy that would support *Monell* liability.

The Court is therefore left with whether the City had a widespread practice or custom for seizure of cell phones that contain video evidence of a crime. For purposes of proving a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law, the plaintiff is required to present evidence that the circumstances that he endured was not an isolated incident. *Calhoun v Ramsey,* 408 F.3d 375, 379 (7th Cir. 2005). To establish *Monell* liability, a practice must be "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

---

[5] A Rule 30(b)(6) deposition operates to allow parties to depose entities, including a governmental agency. The entity must designate persons who consent to testify on its behalf.

17

Mr. King has presented evidence that at a fall 2010 training session, Officer Daley fielded a question about cell phone seizure in the context of crowd control and interference with an emergency scene. Although Officer Daley did not remember the specifics, Officer Miller testified: "we just had that in-service training where they mentioned we could take cell phones if they film a resister." Dkt. 58-6 at 5, 13:19–21. Similarly, Officer McCauley testified that when he received training about crowd control at crime scenes: "Number one is the failure to leave an emergency scene and if you see somebody recording a crime with their cell phone, to take their cell phone as evidence." Dkt. 58-3 at 23, 36:17–20. Officer McCauley went on to state:

> Q. And your actions that day were consistent with doing that, with trying to take his cell phone as evidence?
>
> A. That's what came into my mind, yes.
>
> Q. And so you were acting pursuant to the training you received by—
>
> A. That is correct.
>
> Q. —the City of Indianapolis, to take his cell phone because he had been videotaping?
>
> A. Yes. To request his cell phone.

Both Officers cited their training with Officer Daley as influencing their interactions with Mr. King.

As further evidence of a practice or custom, Mr. King points to testimony of Officer Daley that following Mr. King's internal affairs complaint, the Marion County Prosecutor's Office and the Office of Corporation Counsel specified its position that the seizure of a person's cell phone under similar circumstances to Mr. King's should be made with either valid consent or a valid search warrant. Dkt. 74-4 at 7:20 to 9:2. Additionally, Officer Miller testified that when he spoke to Mr. King, "[h]onestly, what was going through my head is we tell people that

18

*a lot* because it usually keeps them from doing it and then the crowd just disperses. We threaten to take cell phones *all the time* and we usually don't, and then they just go away." Dkt. 72-7 at 7, 16:16-25 (emphasis added). Taking the facts most favorable to Mr. King, a reasonable jury could find that the information provided at training established a practice or custom within the department and as Officer Miller stated, this practice was widespread and used "*all the time*." Therefore, the Court finds there is sufficient evidence precluding summary judgment on this issue.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion (Dkt. 56) is **GRANTED in part** and **DENIED in part**. First, Defendant Officers are entitled to qualified immunity on Mr. King's First Amendment claim. Second, Officers Miller and Alford were not sufficiently personally involved to be held liable under § 1983. Third, Officers McCauley, Miller, and Alford did not fail to intervene under § 1983. Summary judgment is therefore **GRANTED** on these claims. Accordingly, Officer Miller and Officer Alford are **DISMISSED** from this action as defendants and Mr. King's First Amendment and failure to intervene claims are also **DISMISSED**.

Fourth, Officer McCauley is not entitled to qualified immunity for the seizure of Mr. King's iPhone because a genuine issue of material fact exists for trial. Fifth, there is a disputed issue of fact of whether the City of Indianapolis can be held liable for the Officers' conduct. Summary judgment is therefore **DENIED** on these claims.

**SO ORDERED.**

Date: 08/29/2013
_____

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael John Woody
mjwoody@att.net

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com

Jillian Leigh Spotts
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jillian.spotts@indy.gov

Alexander Phillip Will
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
awill@indygov.org

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com